UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN BROWN,

                              Plaintiff,
                                                        1:22-CV-0394
v.                                                     (GTS/DJS)

THE UNITED STATES OF AMERICA,

                              Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

DeGRAFF, FOY & KUNZ, LLP                   GEORGE J. SZARY, ESQ.
   Counsel for Plaintiff
41 State Street, Suite 901
Albany, NY 12207

HON. CARLA B. FREEDMAN                 CATHLEEN B. CLARK, ESQ.
UNITED STATES ATTORNEY               Assistant United States Attorney
   Counsel for Defendant
James T. Foley Courthouse
445 Broadway, Room 218
Albany, NY 12207-2924

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this medical malpractice action pursuant to the Federal Tort Claims Act ("FTCA") filed by Susan Brown ("Plaintiff") against the United States of America ("Defendant"), is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 24.) For the reasons set forth below, Defendant's motion is granted and Plaintiff's Complaint is dismissed.

**I.     RELEVANT BACKGROUND**

        **A.     Plaintiff's Complaint**

Generally, in her Complaint, Plaintiff alleges that Defendant, as the *de facto* employer of Dr. Erin Morine, rendered to her medical care that was negligent, unskillful, and carelessly performed related to a left calcaneus fracture in her foot and caused her to suffer mental and physical effects as a result of a delay in appropriate care.   (Dkt. No. 1.)

### B. Undisputed Material Facts on Defendant's Motion for Summary Judgment

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."   N.D.N.Y. L.R. 56.1(b).   This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties."   *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]).   Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'"   *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]).   "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."   N.D.N.Y. L.R. 56.1(b).

Applying this legal standard here, the following facts have been asserted and supported

by record citations by Defendant, and either expressly admitted or denied without a supporting record citation by Plaintiff.

1. Continuously since approximately 1999, Hudson Headwaters Health Network ("HHHN") has been a Community Health Center ("CHC") that receives federal funds pursuant to 42 U.S.C. § 254b.

2. As such, for the last 24 years, HHHN and certain HHHN personnel have been "deemed" by the Department of Health and Human Services ("DHHS") to be employees of the Public Health Service.

3. Accordingly, pursuant to the Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat. 3268 (1992), HHHN has fallen under the scope of the FTCA since 1999.

4. Approval of HHHN's application deemed both it and its qualifying personnel to be Public Health Service employees only for purposes of 42 U.S.C. § 233.

5. The home page of HHHN's website specifically states that HHHN is a

> 501(c)(3) nonprofit and Federally Qualified Health Center (FQHC) funded in part through a grant from the U.S. Department of Health and Human Services and generous community support. Hudson Headwaters Health Network is a Health Center Program grantee under 42 U.S.C. 254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n). Hudson Headwaters Health Network is granted medical malpractice liability protection through the Federal Tort Claims Act ("FTCA") and its employees are considered Federal employees with the Federal government acting as their primary insurer.[1]

---

[1] Plaintiff admits this asserted fact but adds facts related to where and how this disclaimer appears on the website that are not relevant to the asserted fact itself. (Dkt. No. 28, Attach. 8, at ¶ 5.) *See Maioriello v. New York State Office for People With Developmental Disabilities*, 272 F. Supp. 3d 307, 311 (N.D.N.Y. 2017) ("[T]hroughout Plaintiff's Rule 7.1 Response, she 'admits' many of the facts asserted by Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses. . . . Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses."); *Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015

6. Since at least 2011, HHHN's public website documented its deemed status as a Federal 330 Health Center Program grantee under 42 U.S.C. § 254b and deemed Public Health Service employee under 42 U.S.C. § 233(g)-(n).[2]

7. In 2018, the year of Plaintiff's injury, HHHN's internet home page stated that it was a Federally Qualified Health Center and Health Resources Service Administration ("HRSA") grantee that was a deemed entity under the FTCA.[3]

8. Information regarding which centers are federally funded health centers that may be sued only under the FTCA can be readily found online at the HRSA Health Center Program website.[4]

---

WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts).

[2]  Plaintiff denies knowledge of the contents of HHHN's website between 2011 and the present version, and argues that "the bare conclusory statement contained within [the Mosher Declaration] is insufficient to demonstrate the contents of said webpage prior between 2011 and the present version of the HHHN website."  (Dkt. No. 28, Attach. 8, at ¶ 6.)  First, Plaintiff's reliance on a lack of knowledge is insufficient to constitute a proper denial of the asserted fact. *Estate of D.B. by Briggs v. Thousand Islands Cent. Sch. Dist.*, 327 F. Supp. 3d 477, 485 n.2 (N.D.N.Y. 2018) (Suddaby, C.J.) (collecting cases).   Second, Plaintiff offers nothing but legal argument that is insufficient to undermine the evidence presented by Defendant in support of this asserted fact.  *See M.R. v. Rispole*, 22-CV-0756, 2024 WL 1655383, at *6 (N.D.N.Y. Apr. 17, 2024) (Kahn, J.) ("Local Rule 56.1[b] does not permit a litigant to include legal arguments in a response to a statement of material facts.").  This asserted fact is deemed to have been admitted.

[3]  This fact is deemed to have been admitted for the reasons discussed in Note 2.

[4]  Although Plaintiff is correct that the cited website does not appear to contain a list of such centers that can be browsed, it does have a very obvious search option to locate a specific center.  *See* https://bphc.hrsa.gov/ftca/index.html (which includes a "Find a Health Center" search box).   Searching "Hudson Headwaters Health Network" produces a list and map of multiple office locations within that network.   This asserted fact has been altered to better reflect the contents of the website, but Plaintiff has not provided any information that would otherwise constitute a proper denial of the asserted fact.

9.	Plaintiff was an employee of HHHN for eight years, from 2013 through 2021.

10.	During the time that Plaintiff was employed by HHHN, she was advised that she did not require personal professional liability coverage because HHHN was covered under the FTCA.

11.	Through her employment at HHHN, Plaintiff knew that HHHN employees are covered under the FTCA by the United States for claims of medical negligence that occur within the scope of their employment.[5]

12.	As an HHHN employee, Plaintiff understood that typically the United States would step into her place as a defendant if she were ever named as an individual defendant in a lawsuit alleging negligence within the scope of her employment.

13.	Plaintiff was not aware that her attorney had filed two separate lawsuits naming Dr. Erin Morine, an HHHN employee, as an individual defendant in New York state court.

---

[5] Plaintiff denies the asserted fact, arguing that her deposition testimony supports only that she was "aware that the United States would step in if [she was] ever named as a defendant in a lawsuit" as an employee of HHHN. (Dkt. No. 28, Attach. 8, at ¶ 11.) However, the evidence cited by Plaintiff does not contradict the asserted fact, which is supported by the evidence cited by Defendant. The relevant exchange at the deposition was as follows:

> Q:	. . . For all intents and purposes under the Federal Tort Claims Act, providers at Hudson Headwaters are covered by the United States. Do you have any understanding about how all that works having been employed by Hudson Headwaters?
> A:	Yes, I do.
> Q:	Were you aware of that when you were employed at Hudson Headwaters?
> A:	Yes.
> . . .
> Q:	So, when you were an employee at Hudson Headwaters, were you aware that the United States would step in if you were ever named as a defendant in a lawsuit?
> A:	Yes.

(Dkt. No. 24, Attach. 3, at 111-12.)

14. Plaintiff "injured her left foot and ankle in a fall" on April 2, 2018.[6]

15. Plaintiff was seen at the Glens Falls Hospital Emergency Department and released home after x-rays were interpreted as being negative for a fracture.

16. The day after the fall, Plaintiff contacted HHHN to request an appointment.

17. During this call, Plaintiff reported that she was a midwife with HHHN and she asked to be seen by Dr. Morine on Thursday morning, April 5, 2018.

18. When Plaintiff first contacted HHHN to request the appointment, she indicated that she thought she needed an MRI. Plaintiff believed she needed an MRI on April 3, 2018, because her "pain was more significant than a strain or sprain should be."

19. In accordance with her request, Plaintiff was first seen by Dr. Morine at HHHN on April 5, 2018, three days after her ankle injury.

20. On April 5, 2018, after examining Plaintiff, Dr. Morine diagnosed Plaintiff with a left ankle sprain and recommended a walking boot. Dr. Morine advised Plaintiff that she could transition to "partial weightbearing as tolerated" and that she should do gentle range of motion exercises outside of the boot multiple times each day.

21. Dr. Morine's plan was for Plaintiff to follow up in two weeks for re-assessment.

22. Plaintiff was a "little disappointed" that Dr. Morine did not order further imaging on April 5, 2018.

23. Plaintiff created a Patient Portal account at HHHN on April 10, 2018, which she used to contact Dr. Morine.

24. Plaintiff sent Dr. Morine the following message on April 10, 2018:

---

[6] Plaintiff admits the asserted fact then improperly attempts to add facts. (Dkt. No. 28, Attach. 8, at ¶ 14.) See supra Note 1.

> Subject: Medical question: status of L foot/ankle
>
> Dr. Morine: <br> Since orthopedics is way out of my knowledge base I just want to check in & see if you think I am progressing as expected-slightly less edema-ecchymosis extensive & persistent and extending up outer aspect of calf-more flexibility in toes-not complete. Remain unable to tolerate weight bearing with 'boot', pain when trying specifically located on outer aspect of Achilles' tendon and arch – I truly appreciate your response – Sue Brown.

25. Dr. Morine responded on April 11, 2018, at 7:36 a.m. and told Plaintiff that her symptoms were to be "expected," but she advised Plaintiff to get repeat x-rays before her next appointment, scheduled for April 19, 2018.

26. Plaintiff responded on April 11, 2018, at 11:12 a.m. and stated "Thank you for the reply! I will get the films done next Monday or Tuesday!"

27. Plaintiff messaged Dr. Morine again on April 12, 2018, about a reddened area that was slightly warm to the touch on the outer aspect of her leg.

28. Plaintiff again messaged Dr. Morine on April 13, 2018, to report that the redness was diminished and there was less warmth.

29. Dr. Morine responded that they would "reevaluate the leg/ankle the next week."

30. Plaintiff had follow-up x-rays performed on April 16, 2018.

31. Those x-rays were interpreted by Dr. Richard Dimick with Adirondack Radiology Associates, P.C.

32. Plaintiff messaged Dr. Morine on the morning of April 16, 2018, to inquire if Dr. Morine had obtained the x-ray results.

33. Dr. Morine responded at 11:34 a.m. on April 16, 2018, and informed Plaintiff that the x-ray had shown no fracture and that she would see Plaintiff for her scheduled follow-up

appointment on April 19, 2018.

34. At her second visit with Dr. Morine on April 19, 2018, Plaintiff reported that her left ankle still hurt, she was experiencing swelling, and she could not bear weight with the walking boot.

35. At this visit, Dr. Morine ordered an MRI in light of the fact that Plaintiff was still having difficulty with weightbearing and everting (i.e., turning) the ankle, and because she had bruising along the plantar aspect of her foot.[7]

36. Plaintiff underwent an MRI on April 21, 2018, at North Country Imaging Center.

37. On April 21, 2018, Plaintiff messaged Dr. Morine to report that the MRI had been completed that day and that she "would appreciate a result call when you get the report."

38. The MRI showed, among other things, a comminuted calcaneal fracture, which is a fracture of the heel bone. Dr. Morine was personally notified of the MRI results on April 23, 2018.[8]

39. That same day, Dr. Morine called Plaintiff and discussed the MRI results with her.

40. Dr. Morine informed Plaintiff that her appointment with Dr. John DiPreta at the

---

[7]  Plaintiff improperly adds facts without expressly denying (and indeed while expressly admitting various portions of) the asserted fact. (Dkt. No. 28, Attach. 8, at ¶ 35.) *See, supra,* Note 1 of this Decision and Order. *See also Nanos v. City of Stamford*, 609 F. Supp. 2d 260, 263 (D. Conn. 2009) ("With regard to Nanos's responses to Paragraphs 8, 13, 15, 17, 19, 20, and 26 of the City's Local Rule 56(a) 1 Statement, the Court finds that Nanos does not actually deny the City's factual allegations, but simply adds commentary or analysis not related to the existence or non-existence of the facts alleged by the City. Such commentary or analysis is not appropriate when responding to a Local Rule Statement, and is best left to the discussion in Nanos's memorandum of law. Therefore, the Court deems admitted [these] Paragraphs . . . of the City's Local Rule 56(a)1 Statement.").

[8]  Plaintiff admits this asserted fact, but adds facts related to the other findings contained within the MRI that are not necessarily material to the issues in this case. (Dkt. No. 28, Attach.

Bone & Joint Center was scheduled for April 25, 2018.

41. When Dr. DiPreta saw Plaintiff on April 25, 2018, he documented that her calcaneus fracture was "nearly four weeks old" and she had a tendon dislocation.

42. Dr. DiPreta's treatment note states that he did "not believe at this point that [the condition] can be treated nonoperatively. However, there is a challenge in correcting the fracture or addressing the fracture at this time in terms of getting optimal reduction as potential wound complications."

43. Dr. DiPreta stated that he believed "an attempt should be made to get the heel into its anatomic position . . . as well as to try to reduce the peroneal tendons [sic] to its anatomic position."

44. Dr. DiPreta planned to do the surgery on April 30, 2018.

45. On April 26, 2018, Plaintiff sent the following message to Dr. Morine through the Patient Portal:

> Hi Erin <br> I wanted to let you know about my appointment with Dr. DiPreta – I am headed for surgery Monday – He feels there is great urgency as 'my window for repair is very small' related to the date of the original injury. I feel confident in his care and assessment. <u>Hindsight being 20/20 I would only say I truly wish I had the MRI ordered earlier when I felt my progress was not as expected.</u> I am in hope of the best possible outcome with the least impact on my future. I will be no (sic) be non-weight bearing for 8 – 10 weeks post-op and then require PT/rehab. I appreciate your kindness, but <u>truly wanted to express my disappointment and frustration</u> with what has been a difficult month. Sue Brown.

46. On April 30, 2018, Dr. DiPreta performed a left calcaneus open reduction and internal fixation surgery, along with a repair of the left peroneal tendon dislocation.

47. Through this federal action and the companion state court case, Plaintiff alleges that the delay from April 2, 2018, to April 25, 2018, caused her to experience "significant pain,

8, at ¶ 38.)

suffering, physical disability, loss of the window of opportunity for receipt of timely and appropriate medical care, and other sequela."

48. On May 26, 2020, Plaintiff filed a complaint in Warren County Supreme Court, naming David M. Markowitz, M.D., Richard Dimick, M.D., Adirondack Radiology Consultants, PC, Glens Falls Hospital, and Erin Morine, DO, as defendants.

49. In the state court complaint, Plaintiff alleged that Dr. Morine failed to evaluate and properly diagnose the fractured left calcaneus on April 5, 2018, and April 10, 2018.

50. Plaintiff alleged that Dr. Morine's negligence caused her to suffer severe injuries, including "pain, suffering, physical disability, loss of opportunity to have timely, beneficial medical care and treatment, [and] has been rendered sick, sore, lame, and disabled, all of which are permanent."

51. On June 2, 2020, Plaintiff filed an amended complaint in Warren County Supreme Court against the same defendants.

52. Due to HHHN's status as a Federally Qualified Health Center and Dr. Morine as an HHHN employee, the United States filed a Notice to Remove the state court action to federal court on September 18, 2020.

53. After the action was removed to federal court, the United States filed a motion to dismiss the complaint on September 24, 2020, because Plaintiff had never filed an Administrative Tort Claim with DHHS as required by 28 U.S.C. § 2675(a).

54. The Court granted the motion to dismiss in a Decision and Order dated November 13, 2020.

55. DHHS received Plaintiff's Administrative Tort Claim on January 12, 2021.

56.    On February 10, 2022, Plaintiff sued Dr. Morine again in Warren Count Supreme Court.

57.    Plaintiff's counsel subsequently discontinued the second state court lawsuit against Dr. Morine and filed this federal action on April 27, 2022.

### C.    Parties' Arguments on Defendant's Motion for Summary Judgment

#### 1.    Defendant's Memorandum of Law

Generally, in its motion, Defendant argues that Plaintiff's action is time-barred because she failed to present an Administrative Tort Claim to DHHS as required by the FTCA within two years from the accrual of her medical malpractice claim. (Dkt. No. 24, Attach. 11.) More specifically, Defendant argues that her claim accrued on April 26, 2018, when she expressed concern to Dr. Morine that the failure to order an MRI sooner had negatively impacted her treatment outcomes, but that she did not send an Administrative Tort Claim to DHHS until November 2020 (which, even at that time, was not sent to the correct address). (*Id.* at 7-9.) Defendant further argues that Plaintiff is not entitled to equitable tolling because there has been no evidence presented that she diligently attempted to pursue her legal rights during the relevant period between April 26, 2018, and April 26, 2020, given that she did not file a state court action until May 26, 2020, and did not submit an Administrative Tort Claim until November 5, 2020, despite the fact that she had personal and actual knowledge that HHHN was a federally funded clinic that is subject to the FTCA based on her status as an employee of HHHN and the fact that HHHN's federal status has been openly publicized for decades. (*Id.* at 9-10.)

#### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion for summary judgment, Plaintiff does not

dispute that her claims accrued as of April 26, 2018, or that she failed to file an Administrative Tort Claim within two years of that date, but instead argues that she should be entitled to equitable tolling based on both evidence that she had been diligently pursuing her rights and the exigent circumstances caused by the COVID-19 pandemic. (Dkt. No. 28, Attach. 7.) Specifically, Plaintiff argues that she diligently pursued her rights by (1) filing a state court complaint on May 26, 2020 (which was within the two-and-a-half year statute of limitations for a medical malpractice action in New York), (2) submitting an Administrative Tort Claim to DHHS on November 5, 2020 (although it was not received by DHHS until January 12, 2021, due to having been sent to the wrong address) after the first federal action was dismissed without prejudice for failure to exhaust administrative remedies, and (3) filing the current federal action within the six months allowed following DHHS' denial of her Administrative Tort Claim. (*Id.* at 6-9.) She further argues that the COVID-19 pandemic constitutes extraordinary circumstances for equitable tolling because the transition to remote work for Plaintiff's counsel caused a "significant and sudden loss of access to the resources that would have been necessary to file Plaintiff's claim under the original deadline set forth by the FTCA." (*Id.* at 9-10.)

        **3.**     **Defendant's Reply Memorandum of Law**

Generally, in reply to Plaintiff's opposition, Defendant argues that equitable tolling is not warranted in this case because Plaintiff has failed to show that she exercised *reasonable* diligence or that the COVID-19 pandemic impacted her ability to submit a timely Administrative Tort Claim in this specific case. (Dkt. No. 29.) Specifically, Defendant argues that, although Plaintiff had actual notice and was aware of the federal status of HHHN and it is stated clearly on HHHN's website that they are covered from liability by the FTCA, neither Plaintiff nor her

12

lawyer appear to have conducted a reasonable investigation into the need to comply with the requirements of the FTCA.  (*Id.*)  Defendant also argues that the fact that the initial state court complaint was filed within the statute of limitations for a medical malpractice claim has no bearing on whether Plaintiff had taken steps to comply with the FTCA, and, in any event, that state court complaint was filed after the FTCA claim period had already ended.  (*Id.*)  Finally, Defendant argues that the COVID-19 pandemic does not by itself constitute an extraordinary circumstance requiring equitable tolling and Plaintiff has not provided any information or evidence regarding how she or her lawyer lacked the necessary resources or ability to submit an Administrative Tort Claim before April 26, 2020, especially given that the pandemic did not begin to affect workplaces until approximately a month before the two-year period ended.  (*Id.*)

## II.    LEGAL STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[9]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.

---

[9]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[10]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.).. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

---

[10]    Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1(b).

statement.

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[11]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

After carefully considering whether Plaintiff's FTCA claim is time-barred, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. *See supra* Part I.C.1. and 3.  Further, the Court finds that equitable tolling is not warranted in this case for the reasons stated in Defendant's memoranda of law.  *Id*.  To these reasons, the Court adds the following analysis.

---

[11]   *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

"'[T]he United States, as sovereign, is immune from suit save as it consents to be sued, and hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit.'" *Rosse v. United States*, 110 F. Supp.3d 415, 421 (N.D.N.Y. 2015) (D'Agostino, J.) (quoting *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 [2d Cir. 1998]). "The FTCA empowers the federal district courts with the 'exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government.'" *Rosse*, 110 F.Supp.3d at 421 (quoting 28 U.S.C. § 1346[b][1]). Pursuant to the FTCA, "'[a] tort claim against the United States shall forever be barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.'" *Watson v. United States*, 865 F.3d 123, 130 (2d Cir. 2017) (quoting 28 U.S.C. § 2401[b]).[12]

Plaintiff concedes that she failed to timely submit an Administrative Tort Claim by April 26, 2020, when the two-year statute of limitations lapsed. As a result, her claim is time-barred unless there is a basis for applying the doctrine of equitable tolling.

As an initial matter, the Supreme Court has affirmatively held that equitable tolling can apply to the deadlines outlined in the FTCA. *United States v. Wong*, 575 U.S. 402, 405 (2015). "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:

---

[12]   The full text of 28 U.S.C. § 2401(b) reads as follows: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). A plaintiff must meet both of these deadlines in order for a district court to have jurisdiction over his or her claim, in the absence of any basis for applying equitable tolling. *United States v. Wong*, 575 U.S. 402, 405 (2015). It is the first of these deadlines that was undisputedly not met in this case.

(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Watson*, 856 F.3d at 132 (quoting *Mottahedah v. United States*, 794 F.3d 347, 352 [2d Cir. 2015]). As the Second Circuit has indicated, "the term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period," such that "to secure equitable tolling, it is not enough for the party to show that he *experienced* extraordinary circumstances[,] [h]e must further demonstrate that those circumstances *caused* him to miss the original filing deadline." *Watson*, 856 F.3d at 132 (internal quotation marks omitted) (emphasis in original).

      As to the first of the relevant criteria, the Court agrees with Defendant that Plaintiff has not met her burden to show that she pursued her rights as to her FTCA claim diligently. Indeed, in her response memorandum of law, Plaintiff does not indicate that she engaged in any conduct in pursuit of her claims during the relevant two-year period between April 26, 2018, and April 26, 2020. Instead, she rests her argument regarding diligence on the fact that she filed a state court action on May 26, 2020, which was within New York's statute of limitations related to medical malpractice claims, and complied with all court-ordered deadlines in the relevant actions that followed in the state and federal courts and with DHHS. (Dkt. No. 28, Attach. 7, at 8-9.) However, the fact that Plaintiff filed a state court action that was timely under state law does not represent a diligent pursuit of her FTCA claim against Defendant. Plaintiff cannot properly sue the United States in New York state court for medical malpractice, a fact that was illustrated by the removal of that action to this court, which subsequently dismissed that action without prejudice for failure to exhaust administrative remedies as required by the FTCA. Because such a claim can be brought only pursuant to the FTCA, it is the statutory deadline related to the

FTCA, and not to an ordinary medical malpractice action, that applies here.   As highlighted by the Statement of Material Facts and as will be discussed in more detail below, Plaintiff and her counsel knew or at least should have known well before April 26, 2020, that her relevant claim as to Dr. Morine was subject to the FTCA; and therefore there is no reasonable basis for finding that Plaintiff's initiation of the state court action after the two-year limitations period had elapsed was a diligent but mistaken effort to assert such claim against Dr. Morine (and by virtue of her inclusion, the United States) as an ordinary medical malpractice action.

Plaintiff also does not provide any evidence or argument that she attempted to submit an Administrative Tort Claim to DHHS until November 5, 2020, more than six months after the deadline to do so had elapsed.   The fact that she attempted to submit that claim shortly after this court dismissed the previous action without prejudice for failure to exhaust administrative remedies is also not sufficient to show diligence because the undisputed evidence presented with Defendant's motion establishes without question that Plaintiff was personally aware that the FTCA would be implicated in her claim against Defendant, and that the applicability of the FTCA was obvious from HHHN's website such that reasonable investigation would have notified Plaintiff and her counsel of the need to comply with the FTCA's requirements even if she was not personally aware.   Although Plaintiff appears to attempt to dispute such knowledge or obviousness in her responses to portions of Defendant's Statement of Material Facts, those denials are insufficient to dispute those facts, as was discussed above in Part I.B of this Decision and Order.   Plaintiff's waiting until this Court informed her of the need to exhaust her administrative remedies therefore does not represent diligent action under the circumstances.

Turning to the second of the required criteria, Plaintiff also has not shown that any

extraordinary circumstance prevented her from complying with the FTCA deadline. The only reason Plaintiff proffers here is the fact that the COVID-19 pandemic resulted in the shutdown of in-person workplaces beginning in mid-March 2020, which caused Plaintiff's counsel to have "a significant and sudden loss of access to the resources that would have been necessary to file Plaintiff's claim under the original deadline set forth in the FTCA." (Dkt. No. 28, Attach. 7, at 9-10.) As an initial matter, the Court notes that this argument does nothing to explain why either Plaintiff or her attorney had been prevented from submitting an Administrative Tort Claim to DHHS at any point between April 26, 2018, and early March 2020 before the pandemic restrictions went into effect. Further, Plaintiff's counsel does not specify what resources he needed to submit the Administrative Tort Claim that he was unable to access as a consequence of being required to work remotely in the early days of the pandemic. It is also notable that, despite relying on a lack of access to resources as the reason for noncompliance, the Administrative Tort Claim was not actually sent to DHHS until November 2020, and only then because this Court had ruled that Plaintiff had failed to exhaust her administrative remedies. Even if the remote work requirement may have justified some delay in submitting the Claim by April 26, 2020, there is no evidence to reasonably suggest it would justify failing to do so until approximately six months later when the evidence clearly demonstrates that, during the intervening time, Plaintiff and her counsel had sufficient access to resources to conduct litigation in both state and federal court. Plaintiff simply has not shown that the COVID-19 pandemic caused her to miss the deadline to submit her Administrative Tort Claim.

For all of these reasons, the Court finds that Plaintiff's FTCA claim against Defendant is time-barred and there is no basis to apply the extraordinary remedy of equitable tolling.

Plaintiff's Complaint is therefore dismissed.

    **ACCORDINGLY**, it is

    **ORDERED** that Defendant's motion for summary judgment (Dkt. No. 24) is **GRANTED**; and it is further

    **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 4, 2024
      Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge